People v Henry (2018 NY Slip Op 07973)





People v Henry


2018 NY Slip Op 07973


Decided on November 21, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: November 21, 2018

107058

[*1]THE PEOPLE OF THE STATE OF NEW YORK, Respondent,
v
RICHARD HENRY, Appellant.

Calendar Date: October 12, 2018

Before: Garry, P.J., Devine, Clark, Aarons and Pritzker, JJ.


Alexander W. Bloomstein, Hillsdale, for appellant.
P. David Soares, District Attorney, Albany (Emily A. Schultz of counsel), for respondent.



MEMORANDUM AND ORDER
Clark, J.
Appeal from a judgment of the County Court of Albany County (Lynch, J.), rendered August 25, 2014, upon a verdict convicting defendant of the crime of possessing a sexual performance by a child (32 counts).
In November 2012, defendant was charged by indictment with 34 counts of possessing a sexual performance by a child based upon his alleged possession of videos and digital images depicting child pornography. Following a trial, a jury found defendant guilty of 32 of those charges, and County Court subsequently sentenced him to an aggregate prison term of 4 to 12 years. Defendant now appeals, and we affirm.
Defendant argues that the jury verdict is not supported by legally sufficient evidence and is against the weight of the evidence. However, because defendant made only a general trial motion for dismissal, his legal sufficiency claim is unpreserved for our review (see People v Chaneyfield, 157 AD3d 996, 996 [2018], lv denied 31 NY3d 1012 [2018]; People v Criss, 151 AD3d 1275, 1276 [2017], lv denied 30 NY3d 979 [2017])[FN1]. Nevertheless, as part of our weight [*2]of the evidence review, we determine whether each element of the charged crime was proven beyond a reasonable doubt (see People v Morris, 140 AD3d 1472, 1473 [2016], lv denied 28 NY3d 1074 [2016]; People v Launder, 132 AD3d 1151, 1151 [2015], lv denied 27 NY3d 1153 [2016]). In a weight of the evidence review, we assess whether a different verdict would have been unreasonable and, if not, we "weigh conflicting testimony, review any rational inferences that may be drawn from the evidence and evaluate the strength of such conclusions" to determine whether, based on the weight of the credible evidence, "the jury was justified in finding the defendant guilty beyond a reasonable doubt" (People v Danielson, 9 NY3d 342, 348 [2007]; see People v Kancharla, 23 NY3d 294, 303 [2014]).
To be found guilty of possessing a sexual performance by a child, the evidence must establish, as relevant here, that the defendant, "knowing the character and content thereof, . . . knowingly has in his [or her] possession or control . . . any performance which includes sexual conduct by a child less than [16] years of age" (Penal Law § 263.16). To constitute knowing possession, the defendant must be aware that he or she is in possession of a sexual performance by a child (see Penal Law § 15.05 [2]; People v Kent, 19 NY3d 290, 301 [2012]). In the case of digital images and videos found on an electronic device, knowing possession may be inferred from evidence establishing that the defendant exercised dominion or control over the material on the device (see People v Kent, 19 NY3d at 301; see generally People v Muhammad, 16 NY3d 184, 188 [2011]). There must be some "affirmative act," such as printing, saving or downloading, to establish such dominion and control (People v Kent, 19 NY3d at 303; see People v Yedinak, 157 AD3d 1052, 1053 [2018]).
At trial, Peter Kozel, an investigator in the State Police computer crime unit, testified that he was assigned to investigate a complaint received by the National Center for Missing and Exploited Children regarding three images of suspected child pornography. Kozel testified that Microsoft forwarded the images to the National Center for Missing and Exploited Children after one of its users uploaded the images to Windows Live, its online cloud storage program. The evidence established that law enforcement was able to determine through records maintained by Microsoft and Time Warner Cable — which were admitted into evidence — the IP address and location from which the three suspect images had been uploaded and that defendant was ultimately identified as the suspected uploader of the images. Kozel, as well as another State Police officer involved in the investigation, testified that they subsequently interviewed defendant and that, during the course of that interview, defendant made various admissions, including that he had access to the Internet through an account belonging to his roommate, that he downloaded files using certain peer-to-peer software, that he had been locked out of his Windows Live account and that he did not contact Microsoft to restore his account because he felt "guilty" about the reason his account had been locked [FN2]. As established by the evidence, the State Police thereafter obtained a warrant to search defendant's home, which resulted in the seizure of defendant's desktop computer, laptop computer and digital hard drive.
Kozel testified that he conducted a forensic evaluation of all three seized devices and found, among other things, the 32 digital images and two videos of child pornography underlying the indictment. With respect to the laptop, Kozel stated that his forensic evaluation revealed the existence of a shortcut to a folder entitled "NROP" — porn spelled backwards — that contained approximately 104,000 files, with 1,706 files in the root of the folder. Kozel stated that he personally examined each of the files and marked 166 images and five videos as suspected child pornography. He testified that he found the three images that were flagged by Microsoft within the "NROP" folder, as well as the two videos and 26 of the 32 images underlying the charges. Kozel's testimony, as well as a report that he generated during the course of his forensic examination of the laptop, demonstrated that certain files from the "NROP" folder, including more than half of the images charged in the indictment, were listed as "recently accessed" files on the laptop. Kozel further testified that he extracted two of the underlying images from defendant's desktop computer and a thumbnail image of suspected child pornography from defendant's digital hard drive.
Defendant testified that he worked as a computer programmer for 20 years, and the substance of his testimony demonstrated that he had extensive knowledge of and experience with computers. He admitted that he had been locked out of his Windows Live account and explained that, when he was uploading his "adult material" to that account, he realized that the images might be prohibited by Microsoft and canceled the upload. He stated that he did not try to restore his account because he was "embarrassed." Defendant further admitted that he used peer-to-peer file sharing programs to download pornography and that he would save that material to a dedicated subdirectory on his D drive, entitled "NROP." However, he denied ever knowingly searching for, downloading, saving or viewing child pornography. He testified that he had never before seen the 32 images and two videos forming the basis for the charges against him. Defendant stated that he would use search terms such as "sex" and "adult porn" and would thereafter download the search results "en masse." He stated that the downloaded files would automatically save to his dedicated subdirectory — a setting that he consciously changed so that he would not share his downloaded files with other peer-to-peer users — and that he did not look at every downloaded file. On cross-examination, defendant acknowledged that he was familiar with a subfolder within the "NROP" folder entitled "Tales," but he denied familiarity with documents contained therein, which included titles such as "Puberty Blues" and "A Four-Year-Old Took My Virginity." When asked whether he had viewed a recently-accessed file with a title that was indicative of child pornography, defendant stated that there was "open" Wi-Fi and that it could have been someone else.
It would not have been unreasonable for the jury to have credited defendant's testimony that he did not knowingly search for, download, view or save any of the images underlying the indictment and to have ultimately reached a different verdict (see People v Yedinak, 157 AD3d at 1055). However, defendant's testimony was contradicted by the evidence establishing that a majority of the images were on the "recently accessed" list on defendant's laptop and had been accessed on different dates. Defendant's denial was further called into question by his admission that he was locked out of his Windows Live account and that he changed the default setting so that other peer-to-peer users could not download his images, as well as his assertion that he was unfamiliar with the documents in the "Tales" subfolder with titles that made their child pornographic content readily apparent. Given this evidence, a jury could, as it did here, reasonably discredit defendant's testimony and determine that defendant knew of the character and content of the videos and images and knowingly possessed them (see id. at 1055-1056). Accordingly, after viewing the evidence in a neutral light and deferring to the jury's credibility [*3]determinations, we find that the verdict is supported by the weight of the credible evidence (see id.; People v Petke, 125 AD3d 1103, 1104-1105 [2015]; People v Tucker, 95 AD3d 1437, 1440 [2012], lv denied 19 NY3d 1105 [2012]; People v Kent, 79 AD3d 52, 69-70 [2010], mod 19 NY3d 290 [2012]).
As a final matter, we are entirely unpersuaded by defendant's contention that his sentence was harsh and excessive.
Garry, P.J., Devine, Aarons and Pritzker, JJ., concur.
ORDERED that the judgment is affirmed.



Footnotes

Footnote 1: At the time that defendant made his initial motion for a trial order of dismissal, he also renewed his earlier application — made during the relevant testimony — for a Frye hearing to evaluate the reliability of certain programs used by the police to connect to defendant's electronic devices and to copy their contents for forensic analysis. To the extent that, on appeal, defendant challenges the lack of a Frye hearing in the context of his legal sufficiency arguments and not as a separate argument requesting a remittal for a Frye hearing, we find no basis to consider the issue.

Footnote 2: An employee of Microsoft testified that Microsoft scans all images uploaded to Windows Live, removes any images that are suspected to be child pornography and thereafter closes the associated user account.